UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACI RUBIN,                                    Case No. 09-11446

            Plaintiff,                          John Feikens
v.                                              United States District Judge

COMMISSIONER OF                                 Michael Hluchaniuk
SOCIAL SECURITY,                                United States Magistrate Judge

            Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 15, 20)

## I.    PROCEDURAL HISTORY

      A.    Proceedings in this Court

      On April 17, 2009,  plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge John Feikens

referred this matter to the undersigned for the purpose of reviewing the

 Commissioner's decision denying plaintiff's claim for a period of disability

insurance benefits.  (Dkt. 3).  This matter is currently before the Court on cross-

motions for summary judgment.  (Dkt. 15, 20).

      B.    Administrative Proceedings

      Plaintiff filed the instant claims on August 5, 2005, alleging that she became

unable to work on February 23, 2005.  (Dkt. 12 Tr. at 65).  The claim was initially

disapproved by the Commissioner on December 15, 2005.  (Dkt. 12, Tr. at 46-50).

Plaintiff requested a hearing and on November 27, 2007, plaintiff appeared without

counsel before Administrative Law Judge (ALJ) John McGovern, who considered

the case *de novo*.  In a decision by the Appeals Council dated February 28, 2008,

the ALJ found that plaintiff was not disabled.  (Dkt. 12, Tr. at 8-19).  Plaintiff

requested a review of this decision on May 5, 2008.  (Dkt. 12, Tr. at 20-21).  The

ALJ's decision became the final decision of the Commissioner when, after the

review of additional exhibits[1] (AC- 1, AC-2, and AC-3, Dkt. 12, Tr. at 380-406),

the Appeals Council, on February 13, 2009, denied plaintiff's request for review.

(Dkt. 12, Tr. at 4-7); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir.

2004).

　　　　For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, defendant's motion for

---

[1] In this circuit, where the Appeals Council considers additional evidence but
denies a request to review the ALJ's decision, since it has been held that the record
is closed at the administrative law judge level, those "AC" exhibits submitted to
the Appeals Council are not part of the record for purposes of judicial review.  *See*
*Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*,
96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the
administrative record is limited to the ALJ's decision, which is the final decision of
the Commissioner, the court can consider only that evidence presented to the ALJ.
In other words, Appeals Council evidence may not be considered for the purpose
of substantial evidence review.

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.      FACTUAL BACKGROUND

### A.      ALJ Findings

Plaintiff was 42 years of age at the time of the most recent administrative

hearing.  (Dkt. 12, Tr. at 37).  Plaintiff's relevant work history included

approximately 13 years as a warehouse operator.  (Dkt. 12, Tr. at 74).  In denying

plaintiff's claims, defendant Commissioner considered degenerative disc disease of

the lumbar spine and asthma as possible bases of disability.  (Dkt. 12, Tr. 13).

The ALJ applied the five-step disability analysis to plaintiff's claim and

found at step one that plaintiff had not engaged in substantial gainful activity since

February 23, 2005.  (Dkt. 12, Tr. at 13).  At step two, the ALJ found that plaintiff's

impairments were "severe" within the meaning of the second sequential step.  *Id.*

At step three, the ALJ found no evidence that plaintiff's combination of

impairments met or equaled one of the listings in the regulations.  (Dkt. 12, Tr. at

14).  At step four, the ALJ found that plaintiff could not perform any past relevant

work.  (Dkt. 12, Tr. at 17).  At step five, the ALJ denied plaintiff benefits because

plaintiff could perform a significant number of jobs available in the national

economy.  (Dkt. 12, Tr. at 18).

B.    <u>Plaintiff's Claims of Error</u>

Plaintiff claims that the evidence showed that she met Listing 1.04 regarding

spinal disorders and Listing 3.03 regarding asthma.  Plaintiff has degenerative disc

disease at L3-4 and L5-S1 (Tr. 366), lumbar radiculopathy (Tr. 176), osteoarthritis

of the lower lumbar spine (Tr. 273) and sciatica (Tr. 325-236).  Plaintiff has

limitation of motion of the spine as showed when Dr. Kravis conducted an

orthopedic examination of the range of motion of her spine, which he concluded

mild, moderate and severe restrictions in motion in right and left flexion and

rotation of the cervical and lumbar spine.  (Tr. 325).  Plaintiff has made multiple

references that the pain radiates from her back down to her lower extremities,

which, according to plaintiff, is symptomatic of nerve root compression.  (Tr. 179,

206, 270, 352, 359, 360, and 362).  Plaintiff's physical therapist stated on

November 20, 2007 that she still had significant limitations that keep her from

functioning with advanced ADL's and job specific activities. (Tr. 342).  Plaintiff

also experienced numbness down her right side and she still had periodic leg

weakness.  (Tr. 359).  Plaintiff was evaluated by Dr. Kravis on November 24,

2006, and said examination revealed myofasciitis in the cervical and thoracic area,

segmental dysfunction and/or subluxation throughout the spine and pelvis, disc

degeneration in the lumbar area, and also sciatica, which causes pain, numbness,

and muscle weakness.  (Tr. 321, 326).  Dr. Kravis conducted an orthopedic

examination of the range of motion of plaintiff's spine, which showed mild restriction during flexion and moderate restriction during left lateral flexion. (Tr. 325). In her lumbar spine, plaintiff had severely restricted range of motion during flexion, mildly restricted during right lateral flexion, mildly restricted during left lateral flexion, mildly restricted in right rotation and moderately restricted during left rotation. It was also noted by Dr. Kravis that she was experiencing tenderness and articular fixation. A radiographic evaluation of plaintiff's spine revealed moderate scoliosis, narrowed disc spacing, anterior spurring, and a decrease in lumbar lordosis. (Tr. 327-328). Dr. Kravis' impressions after follow up x-rays were subluxation complexes of the cervical, thoracic, and lumbosacral regions of the spine, osteoarthritis of the lower lumbar region of the spine, and hyperextension injury of the cervical spine. (Tr. 273). Dr. Kravis treated Rubin on February 14, 2007, and found that she had a decrease in the normal ranges of motion of several individual vertebral motor units.

While the ALJ stated that Dr. Konst (a neurologist), wrote that "claimant continued to have lumbar back pain and numbness down right side; however, claimant stated that physical therapy was helping to greatly reduce her spasms," the ALJ failed to note that she still has periodic leg weakness and that she demonstrated decreased pinprick bilaterally of the lower extremities on physical examination, which Dr. Konst stated was decreased by 90% on the right lower

extremity and 10% on the left lower extremity at her September 11, 2007 examination. (Tr. 352, 359). Thus, according to plaintiff, she meets Listing 1.04A because she has evidence of nerve root compression shown by experiencing radiating pain, numbness, and leg weakness (muscle weakness) from her degenerative disc disease.

Plaintiff argues that she satisfies Listing 3.03B, based on the number of hospitalizations. As to Listing 3.03A, plaintiff claims that she has provided sufficient good cause for this matter to be remanded to the ALJ for consideration of new evidence, specifically, her pulmonary testing in November, 2007, which she claims satisfies the Listing. Plaintiff had multiple spirometry tests conducted and, even with her medications, her FEV-1 scores worsened. Plaintiff's last spirometry test conducted on December 4, 2007, and her FEV1 scores were 1.42, 1.45, and 1.51 (Tr.399). An individual who is 68-69 inches (plaintiff is 68 inches), with a FEV-1 score of less than or equal to 1.45 is considered disabled under Listing 3.03.

Plaintiff also claims that the ALJ failed to properly evaluate her pain under *Duncan v. Sec'y of Health and Hum. Serv.*, 801 F.2d 847 (6th Cir. 1986) and the factors set forth in the regulations. It was left out that her physical therapist stated that "Traci still has significant limitations that keep her from functioning with advanced ADL's and job specific activities." Plaintiff argues that the pain and nerve damage from her lipoma surgeries was not taken into account and that her

chronic asthma, for which she needed regular medical care was not taken into account.

C.     The Commissioner's Counter-Motion for Summary Judgment

The Commissioner argues that the ALJ's findings that the medical evidence did not substantiate plaintiff's allegations of disabling symptoms is supported by substantial evidence.  For example, the ALJ, in finding that plaintiff's asthma was not disabling, noted that plaintiff's asthma-related hospitalizations were brought on at specific times of year, due to weather, and that, after being treated with medication, her symptoms quickly resolved and she was discharged.  (Tr. 15, 129, 131-34, 240-45, 294-95).  Additionally, the ALJ observed that Dr. Reinheimer's treatment notes indicated that Plaintiff's asthma was fairly well-controlled with medication.  (Tr. 15-16, 263-69, 297-98, 305).  The ALJ also relied on Dr. Reinheimer's opinion that plaintiff could perform work with some restrictions. (Tr. 298).  Dr. Tess, who also treated plaintiff's asthma, commented that permanent disability did not "jive" with plaintiff being able to play "aggressive football."  (Tr. 320).

The Commissioner also asserts that the ALJ's conclusion that plaintiff's back pain did not disable her from all work is supported by the substantial evidence, pointing to the ALJ's observation that in November 2007, plaintiff told Dr. Konst, her neurologist, that her back pain was improving with physical therapy.

Report and Recommendation
Cross-Motions for Summary Judgment
*Rubin v. Comm'r*; Case No. 09-11446

(Tr. 16, 352). The ALJ, however, gave little weight to Dr. Kaufman's finding that

plaintiff could lift up to fifty pounds and sit, stand, and walk for up to six hours in

an eight-hour day, finding that such an assessment failed to consider Plaintiff's

subjective complaints. (Tr. 17, 141). The ALJ also considered plaintiff's

activities, which included playing football and working part-time, finding that such

activities supported the conclusion that plaintiff could perform a reduced range of

light work. (Tr. 17).

The Commissioner urges the Court to reject plaintiff's contention that the

ALJ failed to give "due deference" to the medical evidence as well as plaintiff's

allegations of disabling pain. According to the Commissioner, the medical

evidence consists of plaintiff's treating doctor finding that she is capable of work

and plaintiff's own account of her activities, which include playing football,

support the ALJ's RFC finding that plaintiff could perform a reduced range of light

work. By additionally requiring a sit/stand option after thirty minutes of sitting

and twenty minutes of standing, limiting plaintiff's bending, stooping, and

crouching, and restricting plaintiff's exposure to environmental pollutants, the

Commissioner argues that the ALJ accounted for plaintiff's subjective complaints

and the medical evidence related to plaintiff's treatment for asthma and back pain.

The Commissioner also argues that plaintiff fails to meet her burden of establishing

that her impairments meet Listings 1.04 and 3.03, and since she fails to explain

how she meets or equals their respective criteria, she has not shown that there is insufficient evidence to support the ALJ's finding that plaintiff does not meet or equal a listed impairment.

The Commissioner also argues that plaintiff failed to show that she is entitled to a sentence six remand under 42 U.S.C. § 405(g), which requires a showing that the evidence is new and material. For purposes of sentence six, evidence is "new" only if it was "not in existence or available to the claimant at the time of the administrative proceeding" and evidence is "material" only if it "would likely change the Commissioner's decision." Plaintiff asserts that remand is warranted because pulmonary function testing performed after the hearing showed an FEV1 of 57%, or moderate obstruction. The Commissioner acknowledges that the pulmonary function testing performed after the November 2007 hearing showed some decreased functioning from testing performed six months earlier, however, it still showed only "moderate" obstruction. (Tr. 264, 269, 399). The Commissioner points out that the RFC finding by the ALJ is already quite restrictive, including a sit/stand option after twenty minutes of standing and thirty minutes of sitting - in accordance with plaintiff's own testimony - and limited exposure to environmental pollutants, so it is unlikely that this new evidence would change the Commissioner's decision. (Tr. 14). In addition, despite the decreased pulmonary function results, Dr. Reinheimer's assessment of plaintiff's asthma was

unchanged given that he again diagnosed moderate to severe asthma, just as he had

months earlier in May 2007. (Tr. 299-300, 403). Thus, according to the

Commissioner, plaintiff has failed to show that the results of pulmonary function

testing performed after the hearing "would likely change the Commissioner's

decision."

The Commissioner urges the Court to reject plaintiff's claim that the ALJ

failed to either request a function report by Dr. Reinheimer or "enter" it after the

hearing. Rather, according to the Commissioner, the record shows that, after the

hearing, records were received from Dr. Reinheimer, including his assessment of

plaintiff's ability to perform work, in which he found that plaintiff could perform

work subject to limitations. (Tr. 298). Plaintiff, therefore, has not established that

such evidence, an assessment by Dr. Reinheimer, was new or "not in existence or

available to the claimant at the time of the administrative proceeding." According

to the Commissioner, the record shows that the ALJ considered such an assessment

and plaintiff fails to explain how any additional assessment by Dr. Reinheimer

would be material, or likely to change the Commissioner's decision.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc.Sec.Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

      B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq*.). Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled. F. Bloch,

Federal Disability Law and Practice § 1.1 (1984). While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

C.     The Listings

Plaintiff "bears the burden of proof at step three to demonstrate that he has

or equals an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1."

*Arnold v. Comm'r of Soc. Sec.*, 2000 WL 1909386, *2 (6th Cir. 2000), citing,

*Burgess v. Sec'y of Health and Hum. Serv.*, 964 F.2d 524, 528 (6th Cir. 1992). If

plaintiff "can show an impairment is listed in Appendix 1 ("the listings"), or is

equal to a listed impairment, the ALJ must find the claimant disabled." *Buress v.*

*Sec'y of Health and Hum. Serv*, 835 F.2d 139, 140 (6th Cir. 1987).  "The listing of

impairments 'provides descriptions of disabling conditions and the elements

necessary to meet the definition of disabled for each impairment." *Arnold*, at *2,

quoting, *Maloney v. Comm'r of Soc. Sec.*, 2000 WL 420700 (6th Cir. 2000).  In

order for plaintiff "to qualify as disabled under a listed impairment, the claimant

must meet all the requirements specified in the Listing." *Id*.  This must be done by

presenting specific medical findings that satisfy the particular Listing. *Sullivan v.

Zebley*, 493 U.S. 521, 530-532 (1990).  An impairment that manifests only some of

the criteria in a particular Listing, "no matter how severely, does not qualify." *Id*. at

530.

      1.     Listing 1.04

Plaintiff asserts that she has satisfied Listing 1.04, subsection A.[2] Listing

1.04 provides the following:

> 1.04 Disorders of the spine (e.g., herniated nucleus
> pulposus, spinal arachnoiditis, spinal stenosis,
> osteoarthritis, degenerative disc disease, facet arthritis,
> vertebral fracture) resulting in compromise of a nerve
> root (including cauda equina) of the spinal cord.  With:
>
>     A.    Evidence of nerve root compression
> characterized by neuro-anatomic distribution of pain,
> limitation of motion of the spine, motor loss (atrophy
> with associated muscle weakness or muscle weakness)

---

[2] Plaintiff does not claim that she has satisfied subsection B (spinal
arachnoiditis) or subsection C (lumbar spinal stenosis).

> accompanied by sensory or reflex loss and, if there is
> involvement of the lower back, positive straight leg
> raising test (sitting and supine);

Plaintiff has made multiple references that the pain radiates from her back down to her lower extremities, which, according to plaintiff, is symptomatic of nerve root compression. (Tr. 179, 206, 270, 352, 359, 360, and 362). However, none of the medical records expressly state that plaintiff suffers from nerve root compression. (Tr. 366) (MRI report dated 10/19/2007 states that "individual cauda equina nerve roots are satisfactory."). An implication, based on radiating pain, is not enough to satisfy the Listing. *See, e.g.*, *Steagall v. Comm'r of Soc. Sec.*, 2009 WL 806634 (S.D. Ohio 2009) (Treating physician's opinion that plaintiff met the Listing for chronic radiculopathy was insufficient to satisfy the listing where medical records stated that there was no nerve root compression.). Plaintiff also does not point to any positive straight leg raising tests in both the sitting and supine positions. Absent such results, plaintiff cannot meet the Listing. *See e.g.*, *Ayende v. Astrue*, 2009 WL 537221, *7 (E.D. Tenn. 2009) (Negative straight let testing results meant that the plaintiff failed to satisfy Listing 1.04). Moreover, while plaintiff points to evidence in the record showing that she had "muscle weakness," she points to no evidence showing "motor loss," demonstrated by atrophy associated with muscle weakness, which is required by the Listing. *See e.g.*, *Waits v. Astrue*, 2008 WL 4276547, *10 (S.D. Ohio 2008). Indeed, her medical records indicate "no muscle

atrophy" as recently as August 28, 2007, and November 30, 2007. (Tr. 295, 362).

Thus, the undersigned agrees with the ALJ that plaintiff failed to meet her burden

of proof and there is no basis to disturb the ALJ's findings.

2.    Listing 3.03

Listing 3.03A pertains to asthma with chronic asthmatic bronchitis. The

listing calls for this condition to be evaluated "under the criteria for chronic

obstructive pulmonary disease in 3.02A." *Smitha v. Astrue*, 2009 WL 2511909, *3

(E.D. Ky. 2009), quoting, 20 C.F.R. pt. 404, Subpt. P., App. 1, § 3.03A. Listing

3.02A requires that plaintiff, who is 68 inches tall, to produce evidence of a Forced

Expiratory Volume, One Second ("FEV-1") equal to or less than 1.45 liters per

second. *Id*. In addition, in order for the testing to be valid, the regulations require

at least three satisfactory forced expiratory maneuvers to be performed, and two of

the three should include both pre- and post-bronchodilator results. *Id*., citing, §

3.00E in App. 1, Subpt. P, No. 4. Finally, in order to satisfy the listing, plaintiff

must demonstrate that this condition has lasted or can be expected to last for a

continuous period of at least 12 months. *Id.*, citing, 20 C.F.R. § 404.1525(c)(4).

Plaintiff has not established that she satisfies Listing 3.03A or that good

cause exists to remand this matter for consideration of her FEV-1 results from

December, 2007. That test shows FEV-1 scores of 1.42, 1.45, and 1.51. Only one

of the three results is less than 1.45, which does not satisfy the Listing. Moreover,

plaintiff offers no evidence that the FEV-1 value was taken when plaintiff was in the "most stable state of health" as required by the regulations. 20 C.F.R. Part 404, Subp. P, App. 1, § 3.00E. While plaintiff asserts that this evidence is significant because her test results were generally worsening over time,[3] plaintiff bears the burden of showing that all elements of the Listing are satisfied and she plainly has not done so. Thus, she has not shown good cause to remand this matter to the ALJ for consideration of the December, 2007 test results with respect to satisfying the Listing.

The undersigned also agrees with the Commissioner that plaintiff has failed to show that the results of pulmonary function testing performed after the hearing "would likely change the Commissioner's decision." Despite the decreased pulmonary function results, Dr. Reinheimer's assessment of plaintiff's asthma was unchanged given that he again diagnosed moderate to severe asthma, just as he had months earlier in May 2007. (Tr. 299-300, 403). Plaintiff testified that she takes daily medications for her asthma and only needs to use her nebulizer "every few months" when she has a "bad attack." (Tr. 428). Plaintiff's own testimony, on November 27, 2007 (one month before the December, 2007 FEV-1 testing),

_____

[3] In April 2006, plaintiff's FEV-1 scores were 2.02 and 2.12. (Tr. 269). In July, 2006, her scores were 1.76, 1.80, and 1.90. (Tr. 264). In January, 2007, her score was 1.84. (Tr. 303). In May, 2007, her scores were 1.64 and 1.70. (Tr. 299). Plaintiff does not offer evidence that these tests satisfied the procedures set forth in the Listing.

evidenced an ability to work despite her asthma as she testified that she has always "looked for work" that does not cause any asthma triggers for her. (Tr. 422). These limitations are accounted for in the RFC, which the Commissioner correctly points out is already quite restrictive, including a sit/stand option after twenty minutes of standing and thirty minutes of sitting and limited exposure to environmental pollutants. Thus, the undersigned agrees that it is unlikely that this new evidence would change the Commissioner's decision, whether the specific requirements of Listing 3.03A is analyzed or her impairments are otherwise considered.

Listing 3.03B requiring plaintiff to show that she suffered from asthma attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every two months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks. According to plaintiff, the ALJ noted that plaintiff was admitted to the hospital on June 21, 2001, July 3, 2003, June 14, 2005, October 30, 2005, and August 25, 2007 for asthma, but failed to note that she was also admitted to the hospital for asthma on June 15, 2004, for intractable bronchospasm and acute exacerbation of chronic asthma. (Tr. 260). Plaintiff also testified that she was admitted to the hospital in June of 2002,

however, she does not point to any medical records in support of this testimony.

(Tr. 385; Dkt. 15, p. 12). Even accepting plaintiff's assertions regarding the

number of hospitalizations, she has not shown that she was hospitalized every two

months or six times per year for 12 consecutive months. At most, she was

hospitalized once or twice per year, or in any consecutive 12 month period. Thus,

she does not satisfy Listing 3.03B. *See e.g.*, *Brooks v. Comm'r of Soc. Sec.*, 2009

WL 8911761, * (S.D. Ohio 2009).

      D.    <u>RFC and Credibility</u>

The residual functional capacity circumscribes "the claimant's residual

abilities or what a claimant can do, not what maladies a claimant suffers from-

though the maladies will certainly inform the ALJ's conclusion about the

claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir.

2002). "A claimant's severe impairment may or may not affect his or her

functional capacity to do work. One does not necessarily establish the other."

*Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004). "The

regulations recognize that individuals who have the same severe impairment may

have different [residual functional capacities] depending on their other

impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217

Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). An ALJ's findings

based on the credibility of an applicant are to be accorded great weight and

deference, particularly since the ALJ is charged with the duty of observing a

witness's demeanor and credibility.  *Walters*, 127 F.3d at 531.

The ALJ determined that plaintiff retained the RFC to perform a limited

range of light work, as follows:

> claimant has the residual functional capacity to perform
> light work with lifting 10 pounds regularly and 20
> pounds occasionally, except she could only sit for 30
> minutes at a time or stand for 20 minutes at a time
> necessitating the need for a sit/stand option. She could
> occasionally perform bending, kneeling, stooping, and
> crouching activities but never climbing or crawling and
> she would need to avoid concentrated exposure to dust,
> fumes, heat, and cold.

(Tr. 14).  Plaintiff has not pointed to any evidence in the record to support her

claim that she cannot perform the limited range of light work as found by the ALJ.

Plaintiff's claim of additional restrictions and limitations beyond those found by

the ALJ seem to be based on the mere existence of her conditions, rather than on

any resulting impairments or specific restrictions.  While the record reveals that

plaintiff's condition resulted in several limitations, as found by the ALJ, the mere

existence of a particular condition is insufficient to establish an inability to work.

*See, e.g.*, *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (The

residual functional capacity circumscribes "the claimant's residual abilities or what

a claimant can do, not what maladies a claimant suffers from-though the maladies

will certainly inform the ALJ's conclusion about the claimant's abilities."); *Yang v.*

*Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004) ("A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other."); *Griffeth*, 217 Fed.Appx. at 429 ("The regulations recognize that individuals who have the same severe impairment may have different residual functional capacities depending on their other impairments, pain, and other symptoms."). Moreover, plaintiff does not offer any opinion from a treating physician that she was more physically limited than as found by the ALJ. *See Maher v. Sec'y of Health and Human Serv.*, 898 F.2d 1106, 1109 (6th Cir. 1987), citing, *Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987) ("lack of physical restrictions constitutes substantial evidence for a finding of non-disability."). To the extent that plaintiff points to other subjective limitations, such subjective evidence is only considered to "the extent [it] can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Ditz v. Comm'r of Soc. Sec.*, 2009 WL 440641, *10 (E.D. Mich. 2009), citing, 20 C.F.R. § 404.1529(a), *Young v. Secretary*, 925 F.2d 146, 150-51 (6th Cir. 1990); *Duncan v. Sec'y*, 801 F.2d 847, 852 (6th Cir. 1986). Plaintiff merely points to her subjective complaints and testimony to support her claim that she was more physically restricted than found by the ALJ. For example, she claims that the ALJ failed to take into account her lipomas and surgeries, but none of her physicians indicated that she was restricted in any way because of the lipomas. She would

have physical therapy after each surgery, but she indicated that the severity of the pain was "mild" and that it did not radiate. (Tr. 375). In this case, the ALJ's RFC finding was entirely consistent with the medical evidence.

The undersigned also concludes that the ALJ's decision to find plaintiff's claimed limitations to be only partially credible is supported by the substantial evidence in the record and was properly incorporated into the RFC finding. The ALJ's obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters*, 127 F.3d at 531. "The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005). The ALJ is only required to

incorporate the limitations that he finds credible. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

As to plaintiff's claim that the ALJ failed to properly credit how limiting her pain was, the undersigned concludes that the ALJ's decision that plaintiff's pain complaints were not fully credible is supported by substantial evidence. As both parties acknowledge, subjective allegations of disabling pain cannot alone support a finding of disability. 20 C.F.R. § 404.1529(a). Rather, the presence of an underlying medical condition, which could produce disabling symptoms, satisfies the first prong of the Sixth Circuit standard for evaluating subjective complaints. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). To satisfy the second prong of the test, and prove that her subjective complaints are disabling, plaintiff must present objective medical evidence confirming the severity of the alleged symptoms, or show that the medical condition is of such severity that it could reasonably be expected to produce disabling symptoms. *Duncan*, 801 F.2d at 853. Where, as here, plaintiff's alleged or reported symptoms were found to exceed the expected level of pain and/or dysfunction, the ALJ properly considered other factors relating to the subjective complaints as set forth in 20 C.F.R. § 404.1529 and SSR 96-7p. SSR 96-7p provides, in part that the adjudicator in addition to the objective medical evidence, must consider the following when assessing the credibility of an individual's statements: (1) the individual's daily

Report and Recommendation
Cross-Motions for Summary Judgment
*Rubin v. Comm'r*; Case No. 09-11446

activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  The adjudicator must then evaluate all of this information and draw appropriate inferences and conclusions about the credibility of the individual's statements.  *Id.*

The ALJ reviewed diagnostic tests, including EMG studies, x-rays, CT scans, and blood work performed from September to November 2007 were either normal or revealed only minimal bulging.  (Tr. 17).  He also noted that earlier x-rays taken of plaintiff's back revealed only mild to moderate scoliosis in the thoracic area with subluxation and mild osteoarthritis.  The ALJ also pointed out that Dr. Konst only recommended that she continue with her PT, take Darvocet for pain relief on a periodic basis, and use muscle relaxants to help her sleep.  The ALJ also found that plaintiff's allegations as to her limitations are not supported by her

activities of daily living. She testified that she cooks meals occasionally, watches television, and browses the internet. She also sometimes does grocery shopping. Plaintiff testified that she occasionally plays volleyball and she was on a softball team the summer before the hearing. And, plaintiff performs part-time work at Ford Field working events at home games. Treatment notes from August 2005 noted that she was playing on a women's professional football team. The undersigned notes, however, that it appears that plaintiff stopped playing football in 2005. The ALJ also pointed out that plaintiff's laminectomy procedure was over 10 years earlier and she returned to work on a full-time basis after the procedure with no residuals until she began experiencing low back pain with radicular symptoms in February 2005. Subsequent treatment notes indicated conservative treatment including a series of epidural steroid injections, chiropractic care, and physical therapy. As the ALJ noted, even though plaintiff alleges disabling symptoms, she continues to work on a part-time basis and continues to play sports such as volleyball and softball. In this case, the undersigned concludes that the ALJ reviewed the applicable factors set forth above, including the medical records, diagnoses, treatment, the effectiveness of treatment, the conservative nature of the treatment, plaintiff's daily activities, and accounted for plaintiff's limitations in his RFC by finding that plaintiff could perform a limited range of light work.

In light of the medical and other evidence discussed above, the lack of

physical restrictions noted by any treating physician, the undersigned concludes that the VE's opinion is consistent with the findings of treating and consulting physicians and mental health professionals, and can properly be considered substantial evidence. Thus, the undersigned concludes that there is an insufficient basis on this record to overturn the ALJ's credibility determination and that the hypothetical relied on properly reflected plaintiff's limitations.

   E.   <u>Conclusion</u>

   After review of the record, the undersigned concludes that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## IV.   RECOMMENDATION

   For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

   The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

<table>
<tr><td></td><td>s/Michael Hluchaniuk</td></tr>
<tr><td>Date: September 8, 2010</td><td>Michael Hluchaniuk<br>United States Magistrate Judge</td></tr>
</table>

# CERTIFICATE OF SERVICE

I certify that on September 8, 2010 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>William J. Brady, Kenneth L. Shaitelman, AUSA, and the Commissioner of Social Security</u>.

s/Darlene Chubb
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov
